UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
: 
SPARTAN RACE, INC., :
:
               Plaintiff, : Case No. 1:21-cv-10895
:
  -against- :
: **COMPLAINT**
XCHANGE HOLDING AG, :
:
               Defendant. :
:
------------------------------------- X

     Spartan Race, Inc. ("Spartan" or "Plaintiff") by and through their attorneys, Gelber & Santillo PLLC, submit this complaint against Xchange Holding AG ("Xchange" or "Defendant"), and allege on information and belief as follows:

## NATURE OF THIS ACTION

     1.    Spartan is a pioneer in the business of organizing timed obstacle course and endurance races, starting in the United States, and now throughout the world. Spartan, which has grown exponentially since its inception in 2010, now operates independently and through its local franchisees in more than 30 countries. As part of its global growth strategy, Spartan has contracted with local franchisee companies, which pay licensing and royalty fees to Spartan (and share in a variety of other revenue streams) in exchange for the right to license and use Spartan's significant intellectual property, and the right to host Spartan races, sell Spartan merchandise, and utilize the Spartan name and brand. Spartan not only offers race event participation, but participation in music, food, alcoholic beverages, merchandise, marketing, and entertainment.

     2.    Local franchisees play a crucial role in representing the Spartan brand internationally, and as a result, Spartan's franchise agreement requires franchisees to make a wide

1

range of financial covenants to ensure that they have the wherewithal to continue operations in a way that does not damage Spartan and is customers.

3. Defendant Xchange (one of those franchisees), contracted with Spartan in 2018 and was provided with intellectual property, including the Spartan Race name, branding, know-how and materials, to set up Spartan races in ten (10) countries in Western Europe. The franchise agreement established a multi-million dollar relationship over the course of five (5) years.

4. Despite receiving significant financial support and concessions from Spartan in 2021, Xchange cancelled races and events because it could no longer afford to host them. Not only did Xchange's conduct damage the Spartan brand, but it was in material breach of the parties' franchise agreement: section 7.2.5 of the agreement prohibits Xchange from becoming insolvent, and section 7.3.3 requires Xchange to "maintain such levels of working capital as [Spartan] deems sufficient to ensure the proper management and operation" of the business.

5. Further, despite full awareness of the size of its deferred revenue liability and precarious financial position, Xchange continued to pay disproportionately high salaries to its owners while not maintaining the ability to meet its obligations, including, notably, to its Spartan customers.

6. Xchange's conduct has caused Spartan significant damage because it is left without a Western European operator for the remainder of the contract term. Spartan must now expend considerable money and resources to build a new business in Western Europe that can host its upcoming events and races. In addition, Spartan has incurred financial damage as a direct result of Xchange's decision to cancel events, and as a result of events that may need to be cancelled in the future.

7. Xchange's cancellations—and the operational issues presented in transitioning to a new operator—strike at the heart of Spartan's reputation, good will, and brand, which is based on endurance, toughness and persevering.

8. Rather than responding to its own financial deficiencies by aiding Spartan in its transition, Xchange has attempted to exploit Spartan's reputational concerns to leverage a huge unwarranted payout as the cost of smoothly transitioning to a new Western European operator.

## SUBJECT MATTER JURISDICTION, VENUE, AND CHOICE OF LAW

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, based on the diversity of the Plaintiffs and the amount in controversy exceeding $75,000.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3) because Defendant is not a U.S. resident, there is no district in which this action may otherwise be brought, and Defendant has agreed, pursuant to the contract between Plaintiff and Defendant, to be subject to the jurisdiction and venue of the federal courts in the Southern District of New York.

11. According to its terms, the contract between Plaintiff and Defendant is governed by the laws of the State of New York.

## THE PARTIES AND PERSONAL JURISDICTION

12. Plaintiff is a Delaware corporation with a principal place of business at 234 Congress Street, Boston, MA 02110.

13. Defendant is a Lichtenstein company with a principal place of business at Landstrasse 3, 9490 Vaduz, Lichtenstein.

14. The contract at issue in this matter was originally between Plaintiff and XchangeAG Sport & Event AG, however, pursuant to an Assignment and Assumption of Spartan

Race Western Europe Franchise Agreement and Consent Thereto, effective November 30, 2020, Plaintiff consented to the assignment of the contract to Xchange Holding AG.

15. Defendant agreed, pursuant to the contract between Plaintiff and Defendant, to be subject to the laws of the state of New York and the jurisdiction of the federal courts in the Southern District of New York, and the contract governs a relationship well in excess of $1,000,000.

## FACTUAL ALLEGATIONS

16. Plaintiff is the premier global brand in organizing and producing timed obstacle course and endurance races.

17. Plaintiff's business began in the United States, where it conducts races, and over the past several years, Plaintiff has franchised its brand to local operators in more than 30 countries throughout the Europe, Asia, Australia and North America.

18. Through the expenditure of time, effort and money, Spartan has acquired unique experience, special skills, techniques and knowledge, and created and developed a unique business system for obstacle course races, which includes offering race event participation, music, food, alcoholic beverages and entertainment ("Spartan's System" or "System"). Spartan's System includes standards, specifications, methods, procedures, techniques, management directives, identification schemes, and proprietary marks and information in connection with the operation of the Spartan Race business.

19. Spartan's System is used in connection with the name Spartan, Spartan Race, Spartan Race design trademark, other trademarks, service marks, trade names and trade symbols, certain distinctive color schemes and other trade dress, signs, slogans, logos, designs, emblems, uniform resource locators ("URLs"), domain names, website addresses, email addresses, digital cellular addresses, wireless web addresses and the like ("e-marks") and copyrights, as Spartan has

adopted and designated, or may subsequently acquire and/or develop and designate for use by its franchisees in connection with Spartan's System (collectively herein referred to as the "Licensed Rights"). Spartan is the owner of the Licensed Rights, together with all the goodwill connected to and/or with such rights.

20. All of the Licensed Rights are recognized by the public as distinctive and valuable, and Xchange recognized the potential benefits to be derived from being associated with Spartan and from utilizing Spartan's Licensed Rights which Spartan makes available to its franchisees through and under franchise agreements.

21. Spartan has developed a reputation and significant goodwill with the public with respect to the products and services available through Spartan's business, which are incredibly valuable to Spartan and its franchisees.

22. On or about March 1, 2018, Spartan and Xchange's predecessor in interest, Xchange AG Sport & Event AG, executed a contract (the "Spartan Race Franchise Agreement" or "Agreement") setting forth the terms of a franchise and license granted by Spartan to Xchange AG, pursuant to which Xchange AG was provided with circumscribed rights to use certain intellectual property, including the Spartan Race name, branding, know-how and materials, to assist Xchange AG in setting up Spartan races in Western Europe.

23. Pursuant to an Assignment and Assumption of Spartan Race Western Europe Franchise Agreement and Consent Thereto, effective November 30, 2020, Plaintiff consented to the assignment of all of its rights and obligations in the contract to Xchange Holding AG.

24. Plaintiff agreed to license to Defendant limited use of the Licensed Rights in Italy, France, Spain, Austria, Andorra, Netherlands, Belgium, Germany, Greece and Luxembourg.

25. In return, Defendant agreed to pay to Plaintiff several types of licensing and royalty fees.

26. In the Agreement, Defendant further agreed to numerous financial covenants, including but not limited to the following:

> (a) "Franchisee [Xchange] shall not, and shall not permit its owners, officers, members, managers, directors, employees or agents to: … (7.2.5) become insolvent, cease to pay its financial debts within ninety (90) calendar days of when they come due, enter into a receivership, a composition agreement or make a general assignment for the benefit of creditors;"
>
> (b) "7.3.3. Franchisee [Xchange] must maintain such levels of working capital as Franchisor [Spartan] deems sufficient to ensure the proper management and operation of the Franchised Business. For the purposes of this Section 7.3.3 'sufficient working capital' should be interpreted to mean cash or cash equivalents in excess of all then current debts, payables, or other obligations of the Franchised Business. Franchisee's working capital must relate solely to the Franchised Business, and may not be co-mingled with any cash or cash equivalents of any other persons or entities and/or line(s) of business".

27. The parties have executed several amendments to the Spartan Race Franchise Agreement over the past three years to expand the number of countries covered by the Agreement and to help Xchange address its financial woes, but these key financial provisions were never amended.

28. Despite receiving extraordinary financial support from Spartan, Xchange has been unable to maintain working capital in excess its current debts, payables and other obligations, and has by its own admission, become insolvent, in breach of the Spartan Race Franchise Agreement.

29. On or about June 14, 2021, Defendant's auditor, Grant Thornton issued a report on Defendant's financial statements for the year ending December 31, 2020. In its Report, Grant Thornton stated:

> We draw your attention to the fact that Xchange Sport & Event AG is over-indebted in the sense of article 182e paragraph 2 PGR.

Additionally, the Board of Directors has not prepared an interim balance sheet as required by article 182e paragraph 2 PGR. Based on our review we have to assume that an interim balance sheet prepared using liquidation values could confirm the over-indebtedness, in this case the provisions of article 182f paragraph 1 PGR would have to be observed.

Without qualifying the conclusion on our review, we draw your attention to note "going concern" to the financial statements disclosing a significant uncertainty relating to the company's ability to continue as a going concern. Should the going concern assumption no longer be appropriate, financial statements using liquidation values would then have to be prepared.

30. On August 28, 2021, Georg Hochegger, the CEO and Managing Partner of Xchange, emailed Jeffrey Connor, Spartan's Executive Vice President and Chief Operating Officer, stating that Xchange would have to cancel several upcoming Spartan events because it could not afford to hold them.

31. Mr. Hochegger explained in his August 28, 2021 email that Xchange had tried to obtain Government aid, but was unsuccessful, and was unable to obtain a credit line from any banks, therefore it "need[ed] a cash injection of 500K in September and one of 500K in November to guarantee the operations and secure the events [in] 2021 and 2022."

32. A few days later, on September 1, 2021, Helge Lorenz, the Managing Director of Xchange, provided even more detail regarding Xchange's dire financial situation to Spartan management, stating that Xchange was in "a financial crisis" and that "before we file insolvency and cancel more events we want to give you the option to take over Western Europe to save markets you are interested in." He explained that "cancelling events is the only chance to survive the winter but even if we survive the winter we won't have money to cover event costs."

33. Giles Chater, Vice President of International at Spartan, responded on September 3, 2021, stating that, after having reviewed Xchange's financial information, it is "clear" that Xchange "is insolvent" and that "even with two EUR500k injections it may not be possible to

successfully trade through 2022" and so "a pre-packaged insolvency is likely the most viable path forward." Spartan requested additional financial information and due diligence from Xchange so that it could assist Xchange with filing for insolvency.

34. On September 9, 2021, Spartan sent a Notice of Breach to Xchange, officially informing Xchange of its breach of the Spartan Race Franchise Agreement, and in particular Xchange's breach of sections 7.2.5 and 7.3.3 of the Agreement. The Notice stated, "it has become clear that based on [Xchange's] own express admissions, as well as, by Spartan's review of certain financial statements and other information provided by [Xchange], that, as it applies to [Xchange's] operation of the Franchised Business in the Territory, [Xchange] has become insolvent and currently is unable to maintain 'sufficient working capital' to operate the Franchised Business moving forward."

35. In the Notice of Breach, Spartan set forth steps that Xchange had to take within 30 days to cure its breach, as per the Spartan Race Franchise Agreement: (1) provide Spartan with a viable and immediate financial plan of action that verifiably demonstrates Xchange's ability to maintain sufficient working capital to operate the business, including all 2022 events within its territory, (2) cooperate with an audit and examination of all financial and related information, including by making available to Spartan any financial records requested, and (3) place into escrow all event related revenue collected in 2022. Although Xchange ultimately agreed to escrow its 2022 customer revenue, it failed to provide Spartan with a viable financial plan or provide Spartan with important financial documentation that it requested. Xchange therefore failed to cure its breach and remains in material breach of the parties' Agreement.

36. Spartan notified Xchange of its failure to sufficiently cure its breach under the terms of the parties' Agreement, via letter dated October 11, 2021.

37. Since September 2021, executives at Spartan and Xchange have met on several occasions and corresponded in an attempt to negotiate a resolution to Xchange's financial difficulties and breach of contract. However, Xchange has refused to be fully transparent regarding its financial situation, has not provided vital information requested by Spartan, and the parties have ultimately been unable to reach any agreement.

38. During this period of negotiation, Xchange provided Spartan multiple cash flow forecasts. All of the provided forecasts clearly showed that Xchange would run out of cash during the 2022 season. The forecasts provided by Xchange relied on the assumption that existing customer obligations would not be fully satisfied.

39. Moreover, on or about October 18, 2021, due to these significant self-acknowledged financial problems, Defendant's auditor, Grant Thornton, refused to even confirm Defendant's ability to continue to operate as a going concern.

40. Spartan terminated Xchange's license on December 3, 2021 by providing Xchange with a Termination Notice of the Spartan Race Franchise Agreement based on Xchange's failure to cure its material breaches of the Agreement.

41. Section 14.1 of the parties' Agreement provides that "the Agreement shall terminate … immediately, upon breach of this agreement by Franchisee [Xchange], which, if curable, is not cured to the satisfaction of [Spartan] within 30 days' written notice … ."

42. In order to allow Xchange to operate a preplanned Spartan race on December 11-12, 2021, Plaintiff extended Defendant's right to operate until December 17, 2021.

43. Pursuant to sections 14.1.1, 14.1.2, and 14.1.4 of the Agreement, Xchange was required to cease using the License Rights, cease its operation as a franchisee of Spartan, and promptly pay all sums due and owing to Spartan.

44. Xchange has refused to recognize Spartan's termination as of December 10, 2021, via letter through their counsel.

45. As a direct result of Xchange's breaches of sections 7.2.5 and 7.3.3 the Spartan Race Franchise Agreement, Spartan has suffered irreparable harm, well in excess of $75,000.

## AS AND FOR THE FIRST CAUSE OF ACTION
### (Breach of Contract)

46. Plaintiffs hereby incorporate the foregoing paragraphs 1-45 of this Complaint as if fully stated herein.

47. Defendant has breached several provisions of the Spartan Race Franchise Agreement, including but not limited to: (1) section 7.2.5 which prohibits Xchange from becoming insolvent or "ceas[ing] to pay its financial debts within ninety (90) calendar days of when they come due", and (2) section 7.3.3 which requires Xchange to "maintain such levels of working capital as [Spartan] deems sufficient to ensure the proper management and operation" of the business.

48. Defendant has breached these material provisions of the contract by failing to maintain sufficient levels of working capital to operate the business, and by becoming (by their own admission) insolvent.

49. Plaintiff has at all times performed under the Spartan Race Franchise Agreement.

50. Plaintiff has incurred substantial damage, including but not limited to lost revenue and profits, as a direct result of Xchange's failure to maintain sufficient working capital and to remain solvent.

51. Plaintiff will also suffer significant lost profits and lost business opportunities during the remainder of the contract term.

52. Defendant's conduct has caused Plaintiff significant damages because Plaintiff must now expend considerable money and resources to build a new business in Western Europe that can host its upcoming events and races.

53. Further, Defendant's refusal to recognize Spartan's termination places Defendant in breach of Section 14.1 of the Agreement, preventing an orderly transition and causing further significant damages to Plaintiff (which are ongoing).

54. Pursuant to Section 14.1.5. of the Spartan Race Franchise Agreement, Defendant is responsible for all Spartan's damages, including consequential damages, and all of Spartan's costs, including attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment awarding the following, as to all counts of its complaint:

1. Damages in the amount to be determined at trial, plus pre-judgment interest;

2. A permanent injunction against Defendant to prevent Defendant from continuing to use Plaintiff's intellectual property and brand name;

3. Pursuant to Section 14.1.5 of the Spartan Race Franchise Agreement, all costs, expenses, and attorneys' fees; and

4. Such other relief as this Court may deem just and appropriate.

Dated: New York, New York
December 20, 2021

GELBER & SANTILLO PLLC
By: /s/ R. Zachary Gelber
R. Zachary Gelber
Fern Mechlowitz
347 West 36th Street, Suite 805
New York, NY 10018
Phone: 212-227-4743
*Attorneys for Plaintiff Spartan Race Inc.*